Lane, C. J.
In 1796, an association of persons, calling themselves the Connecticut Land Company, purchased of the State of ■Connecticut, for the price of $1,200,000, all the land, except the western half million acres, which the state owned within the present limits of Ohio. By the arrangements of the company, *406 the title was vested in three trustees, to hold until partition should be made, and to convey to each proprietor, after partition, in the1 proportion which each had advanced, to make up the consideration.
On October 7, 1800, the trustees of the Connecticut Land Company made conveyances to certain of the proprietors, of whom are Kinsman, Swift, and J. and A. Adams, of portions of the land held by them, among which is lot No. 95, embracing the premises now in dispute. To that portion, which ^passed by this deed to Jabez Adams, and three-fourths of the share of Kinsman, the plaintiff shows a good title, exeept only for what may be deducted on account of a tax sale, which will be referred to hereafter.
But the plaintiff claims the further interest of Swift. Swift was a proprietor in the Connecticut Land Company. In 1798, Swift, Kinsman, J. and A. Adams, and a number of the other proprietors in this company, whose shares amounted, collectively, to $84,000, formed a separate association, under the name of the Erie Land Company. The members of .the Erie Land Company entered into a deed of indenture with certain trustees, in which they recited that the trustees of the Connecticut Land Company had conveyed to them their respective shares, and that they associated themselves together for the more convenient management of their property, under the name of the Erie Land Company; and in carrying their scheme into execution, they thereupon proceed to-convey their respective interests to certain persons to hold as trustees of the Erie Land Company.
This association dissolved itself in 1801, and on the 21st of April in that year, the trustees of the Erie Land Company, retransferring the estate they held in trust, made a deed to Swift, in which they recited that partition had been made, and they thereupon conveyed to him, without warranty, his due proportion of the land. This deed purported to be made in Connecticut, and to be acknowledged before Camden Clcaveland, “ one of tho justices of the court of common pleas of the county of Trumbull, in the Northwestern Territory.”
In 1803, Swift conveyed to Kinsman whatever he acquired! under the last-described deed. The right to recover this interest of Swift in this action depends, therefore, upon determining the *407 nature and extent of the estate, which the trustees of the Erie Land Company had and transmitted to him.
The defendants insist that nothing passed to Swift by this deed, because the trustees of the Erie Land Company had not themselves, at that time, acquired a legal title. The individuals composing that association conveyed to their trustees in *1798; but the legal title was then held by the trustees of the Connecticut Land Company, from whom it did not pass until 1800. This objection well lies; the deed of 1798, made by those who have no legal title, and being a release without warranty, transfers no legal interest, although the grantor should afterward acquire a legal title; for a release, where no estoppel arises from warranty or otherwise, operates only on their existing rights.
The plaintiff relies upon evidence of legal title, from the production of “the drafts,” or “the book of drafts.” While the title of the Western Reserve was with the trustees of the Connecticut Land Company, a plan of division was adopted, the names of the proprietors were arranged in classes, and an appropriation of land was “ drawn” for each class, after the form of drawing a lottery. This act of the association, which affects all the land lying within the territory, held under this title, and embracing ten populous counties, is called “ the draft,” and the book of the association, where it is registered, is called the “book of drafts.” It is urged that a proceeding of so public a nature, affecting so large a quantity of land, and so many individuals, and executed at so early a day, before actual settlement of this part of the state, may be relied on as a legal title. It is doubtless evidence of an equity against the trustees; and it is a matter very generally necessary to show what land is covered by a deed. But the parties to that association never contemplated any further effect from those proceedings, than a partition among cestuis que trust; and the trustees in all cases, except those of gross negligence, have conveyed the fee of.the separate interests to their respective owners.
If, however, much of the land yet remains unconveyed, the evils which the defendant’s counsel apprehend, will, in most cases, be removed by the operation of another principle. Where a cestui que trust is found in possession (especially if such possession has continued for a long time) of land which a trustee ought to have conveyed to him, such conveyance will be presumed. Jackson, ex dem. Colden et al. v. Moore, 13 *Johns. 516; 1 Hill. *408 Abr. 224. But this presumption will not aid the plaintiff here. It springs from possession ; it is raised to support a possession; it bas no existence in Ms favor who attacks the rights of one who holds the possession adversely against him.
The recital in the deed from Swift and others, to the trustees of the Erie Land Company, is next to be considered. The preamble sets forth : “ Whereas, the trustees of the Connecticut Land Company have, by separate deeds, dated on the-day of-, 1798, reconveyed to the parties of the first part, respectively, all the right, title, and interest, in and to,” certain lands, including tho premises. Now, the plain effect of such a recital as this is to conclude the parties to that deed, and all who claim through them, from denying the existence of such conveyance as, in this deed, is averred to have been made. The estoppel upon them is as effectual, as if it were from warranty. Douglas v. Scott, 5 Ohio, 194; Scott v. Douglas, 7 Ohio, 227. And it is too limited a view of the effect of such an estoppel to confine its operation to those only who claim an interest through the deed. A person in possession sustaining his possession by no other title than a denial that a former owner has parted with his right, is not a stranger; he becomes privy in estate to him whose title he retains, and is concluded by what destroys it in his hands; for, if title can be traced by B. to A., and B. can fasten upon A. the incapacity of asserting his right, in consequence of his admission that he has convoyed to B., it is not just that a stranger, standing on A.’s claims only, and relying on no superior right, should be permitted to. contest the existence of a fact, which those interested have settled. The law, therefore, wisely attaches the disability of A. to all who maintain his title, and permits such estoppels to be used not merely defensively, but to sustain actions of ejectment. 2 Hill. Abr. 401. The present case affords a proper application of these rules. The sole defense consists in maintaining an outstanding title in Swift; but a fact is shown by Swift’s admission', which proves this title has no existence, and that the estate has passed to the ^plaintiff, an admission which binds not Swiit only, and his heirs and assignees, but all who seek protection under the shelter of his name.
Since then, by the operation of this doctrine, the title may be traced from Swift to the trustees of the Erie Land Company, the next deed in the sories is the reconveyance from these trustees. *409 The only defect in this is its acknowledgment. The deed was made in Connecticut and was acknowledged there, but before ah ¡associate judge of the common pleas of the county, in the then territory of Ohio, in which the land was situated. We need not now decide if any extraterritorial act of a state judge can be supported, because the validity of deeds executed like this, was established many years since. Lessee of Moore v. Vance, 1 Ohio, 1.
A decision which has become a rule of property, which we must not unnecessarily disturb.
The result of this investigation shows that the law attaches to the several acts of the parties the effects they designed, and invested in Kinsman the interest he purchased from Swift. An investigation of the right of Jabez Adams to the interest of Asahel, is attended with the same consequence; so, that both these estates may be recovered by the plaintiff.
Before these shares can be ascertained from lot No. 95, the eight acres sold for taxes must be deducted from the whole lot; for if defects exist, they have not been pointed out by counsel, and they have escaped our search. . Judgment for plaintiff.